# EXHIBIT A

**EXECUTION COPY**

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement"), is entered into as of this 24th day of June, 2008 by, between, and among Janice B. Grubin, not individually but solely in her capacity as Chapter 11 Trustee (the "Trustee") of Food Management Group, LLC, KMA I, Inc., KMA II, Inc., KMA III, Inc., and Bronx Donut Bakery, Inc. (collectively, the "Debtors"), on the one hand, and Robert L. Rattet ("Rattet"), Jonathan S. Pasternak ("Pasternak"), and Rattet, Pasternak & Gordon Oliver LLP (the "Rattet Law Firm," and collectively with Rattet and Pasternak, the "Rattet Parties"), on the other.

### RECITALS

A.    On June 1, 2004 and June 2, 2004 (the "Petition Dates"), the Debtors each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors' bankruptcy cases are being jointly administered under Case No. 04-22880 (ASH) and are styled *In re Food Management Group, LLC, et al.* (the "Bankruptcy Cases").

B.    On June 4, 2004, the Debtors filed an application for entry of an order authorizing and approving the retention of the Rattet Law Firm as counsel. By Order entered June 10, 2004, the Bankruptcy Court granted the Debtors' application to retain the Rattet Law Firm as their general bankruptcy counsel, effective as of June 1, 2004.

C.    By Orders of the Bankruptcy Court entered on September 1, 2005 and September 2, 2005, the Bankruptcy Court approved the appointment of Janice B. Grubin as the Trustee.

D.    Pursuant to an Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, entered July 1, 2004 (the "Interim Fee Procedures Order"), the Rattet Law Firm seeks payment

of fees and expenses for (i) the time period June 1, 2004 through September 1, 2005, pursuant to

its First Interim Application for Allowance of Professional Compensation and Reimbursement of

Expenses of Rattet, Pasternak & Gordon Oliver, LLP, Attorneys for the Superseded Debtors-in-

Possession, filed October 3, 2005 (the "First Interim Fee Application"); (ii) the time period

September 2, 2005 through December 31, 2005, pursuant to its Second Interim and Final

Application for Allowance of Professional Compensation and Reimbursement of Expenses of

Rattet, Pasternak & Gordon Oliver, LLP, Attorneys for the Superseded Debtors-in-Possession,

filed February 28, 2006 (the "Second Interim Fee Application"); and (iii) additional amounts

expended and incurred subsequent to its Second Interim Fee Application.

E.    Pursuant to the First Interim Fee Application (and as more fully detailed in

Exhibit A hereto), the Rattet Law Firm requested the payment of $997,987.75 in fees and

$125,994.73 in expenses.  Under the Interim Fee Procedures Order, the Rattet Law Firm has

been paid $653,408.88 in fees and $120,361.47 in expenses for the fees and expenses requested

in the First Interim Fee Application.

F.    Pursuant to the Second Interim Fee Application, the Rattet Law Firm has

requested the payment of $19,551.00 in fees and $5,981.22 in expenses.

G.    In addition, the Rattet Law has sought payment for fees and expenses for months

after the period covered by the Second Interim Fee Application for the time period from January

2006 through October 2006 totaling $64,807.50 in fees and $1,423.10 in expenses.

H.    Accordingly, the Rattet Parties assert that a total amount of $816,672.49 has been

paid to the Rattet Law Firm by the Debtors' Bankruptcy Estates.  That amount includes (i)

application of $42,902.14 for a pre-petition retainer; (ii) payment of fees in the amount of

$653,408.88, which represents approximately 80% of the Rattet Law Firm's fees sought by the

2

First Fee Application; and (iii) payment of expenses in the amount of $120,361.47, which represents approximately 95% of the expenses sought by the First Interim Fee Application.

I.     As of the date of this Agreement, the Rattet Law Firm has asserted a claim for unpaid professional fees and expenses for its services as counsel to the Debtors in the Bankruptcy Cases in the amount of $386,035.23 in fees and $13,037.58 in expenses submitted pursuant to the Interim Fee Procedures Order and in the amount of $84,358.50 in fees and $7,404.32 in expenses submitted from and after September 2, 2005. Accordingly, the Rattet Parties assert that they have unpaid fees and expenses in the amount of $399,072.81 (the "Unpaid Amounts").[1]

J.     On February 13, 2007, the Trustee, on behalf of the Debtors, commenced an adversary proceeding against the Rattet Parties and other individuals and entities captioned *Grubin v. Gianopoulos, et al.,* Adversary Proceeding Number 07-08221, to recover, *inter alia,* damages allegedly resulting from an offer made by 64 East 126th Realty LLC ("64 East") to purchase all or substantially all of the Debtors' assets (the "64 East Adversary Proceeding"). The 64 East Adversary Proceeding was ultimately assigned to United States Bankruptcy Judge Martin Glenn.

K.     On February 25, 2008, the Rattet Parties responded to the allegations against them as set forth in the Trustee's Amended Complaint, filed on February 12, 2008, by filing an Answer denying any wrongdoing or liability in the 64 East Adversary Proceeding and asserting numerous affirmative defenses. Various issues are currently pending related to the 64 East Adversary Proceeding, including: (i) determination of whether the 64 East Adversary Proceeding is a "core" or "non-core" proceeding; (ii) the Trustee's Motion to Strike the Rattet Parties'

---

[1]     Calculation of the Unpaid Amounts includes application of the $42,902.14 pre-petition retainer which has not, as of yet, been applied to the amounts claimed by the Rattet Parties.

Affirmative Defenses Numbered 1-7, 10-12, 14, 16-20, 25, 26, 29, 30 and 32, and their Demand

for a Trial by Jury; (iii) the appeal of Judge Glenn's April 7, 2008 Order denying the Motion to

Intervene, filed by Avrum J. Rosen, Esq., on behalf of proposed intervenor Matrix Realty Group,

Inc. on March 21, 2008 (said appeal having been docketed with the United States District Court

for the Southern District of New York on May 15, 2008 and assigned Case No. 08-cv-04514-

WHP) (the "Matrix Appeal"); and (iv) the Motion to Withdraw the Reference (the "Motion to

Withdraw the Reference") filed by the Rattet Parties on February 26, 2008 in the 64 East

Adversary Proceeding, which resulted in the Bankruptcy Clerk opening on February 28, 2008,

Case No. 08-cv-02000-SCR, captioned *Janice B. Grubin, as Chapter 11 Trustee v. Robert L.*

*Rattet, et al.*, in the United States District Court for the Southern District of New York (the

"District Court Proceeding").

      L.    It is the belief of the Rattet Parties that the costs of litigating the 64 East

Adversary Proceeding would exceed the costs associated with this settlement, and it is therefore

in their best interests to settle all disputes relating to the Debtors' Bankruptcy Cases by, between,

and among them, on the one hand, and the Trustee, the Debtors, and the Debtors' Bankruptcy

Estates, on the other.

      M.    The Trustee, on the one hand, and Rattet Parties, on the other, have negotiated in

good faith the terms of this Agreement as set forth below, after agreeing to, and engaging in a

mediation process in which James L. Garrity served as mediator pursuant to the joint selection of

the Parties.

**AGREEMENT**

**ARTICLE I**

**RECITALS/DEFINITIONS**

Section 1.1    **Recitals**.  The recitals set forth above are incorporated by reference herein and explicitly made a part of this Agreement.

Section 1.2    **Definitions**.  Unless otherwise defined herein, capitalized terms shall have the definitions set forth below as follows:

(a)    "Approval Order" shall mean the order of the Bankruptcy Court approving this Agreement and authorizing and directing the consummation of the transactions contemplated herein in form and substance reasonably satisfactory to the Trustee and the Rattet Parties.

(b)    "Bankruptcy Estates" shall mean the bankruptcy estates of the Debtors.

(c)    "Effective Date" shall mean the earlier to occur of (i) the second business day after the Approval Order becomes a Final Order; and (ii) such other date as the Parties, in their joint and absolute discretion, agree in writing.

(d)    "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Cases or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

(e)    "Paid Fees" shall mean $816,672.49, which represents all amounts paid in fees and expenses to the Rattet Law Firm by the Debtors' Bankruptcy Estates.

(f)    "Parties" shall mean the Trustee, on the one hand, and the Rattet Parties, on the other hand, and "Party" shall mean one of the "Parties," as indicated.

5

(g)    "Settlement Motion" shall mean the motion to be filed by the Trustee in the Bankruptcy Cases seeking Bankruptcy Court approval of this Agreement.

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES

Section 2.1    **Representations and Warranties of the Rattet Parties**.  Each of the Rattet Parties hereby represents and warrants for himself or itself, as the case may be, that (i) he or it, as the case may be, has not assigned, sold, participated, granted, conveyed, or otherwise transferred, and will not assign, sell, participate, grant, convey or otherwise transfer, in whole or in part, any claims, demands, defenses, liabilities, and causes of action of any and every kind, character or nature whatsoever, in law or in equity, whether asserted or unasserted, known or unknown, suspected or unsuspected, arising out of or related to the Debtors' Bankruptcy Cases or any part of his or its rights, title and interest in this Agreement to any third parties; (ii) the Rattet Law Firm has the full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (a) have been duly and validly authorized by it and (b) are not in contravention of its organizational documents or any agreements specifically applicable to it; (iii) he or it, as the case may be, does not have knowledge of any proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body that is pending against any of the Rattet Parties which would adversely affect their respective abilities to enter into this Agreement or to perform their respective obligations hereunder; (iv) the Rattet Law Firm has received $696,311.07 in fees and $120,361.47 in expenses by the Debtors' Bankruptcy Estates in the form of retainers and interim distributions; (v) the Rattet Law Firm has asserted that it has outstanding unpaid professional fees in the amount of $386,035.23 and unpaid expenses in the amount of

6

$13,037.58; and (vi) the accounting, including the back-up records, provided to the Trustee with respect to any unpaid fees and/or expenses of the Rattet Law Firm is true and accurate to the best of their knowledge, information, and belief.

Section 2.2    **Representations and Warranties of the Trustee**.  The Trustee represents and warrants that: (i) subject to the entry of the Approval Order, she has full requisite power and authority to execute and deliver and to perform her obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by her in connection herewith, have been duly and validly authorized by her; and (ii) she does not have knowledge of any proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body that is pending against the Debtors or her which would adversely affect her ability to enter into this Agreement or to perform the obligations hereunder.

## ARTICLE III

## SETTLEMENT STRUCTURE

Section 3.1    **The Settlement Amount**.  The Rattet Parties agree to irrevocably pay or cause to be paid to the Trustee on behalf of the Debtors' Bankruptcy Estates, pursuant to the terms, conditions and requirements set forth herein, the aggregate sum of $345,000 (the "Cash Payment") by check delivered to the Trustee within twenty-one (21) business days after the Effective Date.

Section 3.2    **Allowance of Administrative Claim**.  The Rattet Law Firm shall have an allowed administrative claim in an amount equal to its Paid Fees (the "Rattet Allowed Claim"), and shall receive no further payments or distributions from the Debtors or the Debtors' Bankruptcy Estates.

7

Section 3.3    **Waiver of Additional Claims and Any Future Distributions From Bankruptcy Court**.    Each Rattet Party, on behalf of himself or itself, unequivocally and irrevocably waives and forever relinquishes any and all right or claim to payment from the Debtors or the Debtors' Bankruptcy Estates of any legal fees and/or expenses exceeding the Paid Fees, including, but not limited to, the Unpaid Amounts.

Section 3.4    **Calculation of Any Disgorgement**.    Solely for purposes of determining whether the Rattet Law Firm must disgorge any fees or expenses from the Rattet Allowed Claim, the Rattet Allowed Claim shall be deemed to be in the amount of $978,500.00 (the "Rattet Disgorgement Claim Amount").    There shall be no disgorgement with respect to the Rattet Allowed Claim for any reason except in the case of an administrative insolvency.    By way of example only and for the avoidance of any doubt, to the extent other professionals are required to disgorge based on an administrative insolvency, then the determination of whether the Rattet Law Firm would be required to disgorge would be as follows:

- If the Debtors' Bankruptcy Cases are not administratively insolvent, the Rattet Law Firm would not be required to disgorge any portion of the Paid Fees.

- If the extent of administrative insolvency in the Debtors' Bankruptcy Cases is 10%, then the Rattet Law Firm would not be required to disgorge any fees or expenses because 10% of $978,500 (i.e., $97,850) deducted from the Rattet Disgorgement Claim Amount equates to $880,650, which amount exceeds the amount of the Paid Fees so there would be no requirement of disgorgement.

- If the extent of administrative insolvency in the Debtors' Bankruptcy Cases is 20%, then the Rattet Law Firm would be required to disgorge approximately $35,000. That figure is determined by taking 20% of $978,500, which is $197,500 and subtracting that amount from the Rattet Disgorgement Claim Amount, which equates to $781,000. The Rattet Law Firm would then be required to disgorge the amount by which the Paid Fees exceed $781,000, which would be approximately $35,000.

8

## ARTICLE IV

## DISMISSAL

Section 4.1    **Dismissal of 64 East Adversary Proceeding**.  Upon the Effective Date

and the irrevocable payment in full of the Cash Payment, all claims, affirmative defenses,

demands, defenses, liabilities, and causes of action of any and every kind, character or nature

whatsoever, in law or in equity, whether asserted or unasserted, known or unknown, suspected or

unsuspected, related to the 64 East Adversary Proceeding, by, among, and between, the Trustee,

on the one hand, and the Rattet Parties, on the other, shall be dismissed with prejudice and

without costs to any party, evidenced by the stipulation executed by the Parties in the form

annexed as Exhibit B hereto.

Section 4.2    **Withdrawal of the Motion to Withdraw**.  Upon the Effective Date, the

Rattet Parties shall submit an order and shall take any and all additional steps necessary to

withdraw the Motion to Withdraw the Reference, pending in the District Court Proceeding, and

have the District Court Proceeding dismissed with prejudice.

## ARTICLE V

## RELEASES

Section 5.1    **Release to the Debtors, the Debtors' Bankruptcy Estates and the**

**Trustee**.  Except for the rights and obligations set forth in this Agreement, upon the Effective

Date and without the need for the execution and delivery of additional documents or the entry of

any additional orders of the Bankruptcy Court, the Rattet Parties for themselves and each of their

affiliates, officers, directors, employees, shareholders, members, principals, agents, attorneys,

representatives and each of their respective successors and assigns (collectively, the "Rattet

Parties Releasors") shall be deemed to have irrevocably and unconditionally forever released,

acquitted and forever discharged the Debtors, the Bankruptcy Estates, the Trustee, and her

9

affiliates, employees, principals, agents, attorneys, representatives and each and every one of their respective successors and assigns (the "Trustee Releasees"), from any and all claims, demands, defenses, liabilities and causes of action of any and every kind, character or nature whatsoever, in law or in equity, whether asserted or unasserted, known or unknown, suspected or unsuspected, which the Rattet Parties Releasors or any of them, have or may have or claim to have, now or in the future, against any of the Trustee Releasees with respect to all claims and counterclaims related to or connected to the Bankruptcy Cases and the Debtors and their estates and all claims and counterclaims that were asserted or could have been asserted in the 64 East Adversary Proceeding.

Section 5.2    **Release of the Rattet Parties**.  Except for the rights and obligations set forth in this Agreement, upon the Effective Date and provided that the Cash Payment is irrevocably paid to the Trustee on behalf of the Debtors, and without the need for the execution and delivery of additional documents or the entry of any additional orders of the Bankruptcy Court, the Trustee, on behalf of the Debtors and the Debtors' Bankruptcy Estates, in her capacity as Trustee, and, in such capacity, her past and present affiliates, employees, principals, agents, attorneys, representatives and each of their respective successors and assigns (collectively, the "Trustee Releasors"), shall be deemed to have irrevocably and unconditionally forever released, acquitted and discharged the Rattet Parties, and their respective past and present affiliates, officers, directors, shareholders, members, employees, principals, agents, attorneys, representatives and each of their respective successors and assigns (collectively, the "Rattet Parties Releasees"), from any and all claims, demands, liabilities, defenses and causes of action of any and every kind, character or nature whatsoever, in law or in equity, whether asserted or unasserted, known or unknown, suspected or unsuspected, which the Trustee Releasors, or any

10

of them, have or may have or claim to have, now or in the future, against any of the Rattet

Parties Releasees with respect to all claims and counterclaims related or connected to the

Bankruptcy Cases and the Debtors and their estates and all claims and counterclaims that were

asserted or could have been asserted in the 64 East Adversary Proceeding.

## ARTICLE VI

## COOPERATION

Section 6.1    **The Parties' Cooperation With Respect to This Agreement**.    The

Parties shall cooperate in good faith and in a timely manner with respect to negotiating and

drafting the Settlement Motion and in seeking to obtain Bankruptcy Court approval of this

Agreement (including responding to any objections thereto).  The Rattet Parties and the Trustee

shall oppose any appeal of the Approval Order, each at their or her own expense but, on the

Trustee's part, only to the extent consistent with her fiduciary duties.  The Trustee shall file the

Settlement Motion within 10 business days of the Parties' execution of this Agreement and shall

seek to schedule a hearing within 45 days of filing the Settlement Motion.

Section 6.2    **The Trustee's Future Cooperation**.    The Trustee agrees to cooperate

with the Rattet Parties by providing the Rattet Law Firm with documents and information as

reasonably requested.  The Trustee shall bear her own costs with regard to providing any such

cooperation.

Section 6.3    **The Rattet Parties' Future Cooperation**.    The Rattet Parties shall

cooperate with the Trustee in the Bankruptcy Cases, all adversary proceedings, and in all other

litigation, proceedings, and any other matters, including, but not limited to, providing documents

and information as reasonably requested.  The Rattet Parties shall bear their own costs with

regard to providing any such cooperation.

11

Section 6.4    **Mutual Non-Disparagement Agreement**.  Each of the Parties agrees on behalf of himself, herself, or itself, as the case may be, that, neither they, nor their affiliates, officers, directors, employees, shareholders, members, principals, agents, attorneys, representatives and each of their respective successors and assigns, shall disparage each other in any manner.  In the event of any breach of this Section, the aggrieved Party shall be entitled to recover any and all damages available at law or in equity for each such breach, plus any attorneys' fees and expenses incurred to successfully enforce this provision.  Any such individual breach or disclosure shall not excuse the alleged breaching Party from their obligations hereunder, nor permit them to make any additional disparaging statements or taking any additional disparaging actions.

## ARTICLE VII

## STANDING

Section 7.1    **The Rattet Parties' Standing Regarding Future Actions**.  The Rattet Parties agree not to oppose any future actions taken by the Trustee in the Bankruptcy Cases, unless such action violates this Agreement.  Except for their right to enforce this Agreement, the Rattet Parties' continuing rights in the Bankruptcy Cases and any related adversary proceeding shall be (i) to receive any and all final distributions on the Rattet Allowed Claim, it being understood that the Rattet Parties have been paid the full amount of their allowed administrative claim on an interim basis and, therefore, are not entitled to any further payments or distributions; and (ii) to defend themselves, including by asserting any claim, offset, defense or denial, against any persons or entities other than the Trustee, the Debtors or the Debtors' Bankruptcy Estates, who may assert claims against them in the Bankruptcy Cases or in related adversary proceedings, so long as such defense does not otherwise violate the terms of this Agreement.  The Rattet Parties shall have no other rights in the Bankruptcy Cases or related adversary proceedings,

12

including, but not limited to, the right to oppose, object or otherwise be heard with respect to any

actions taken by the Trustee, the Debtors or the Debtors' Bankruptcy Estates in the Bankruptcy

Cases or any adversary proceedings related thereto.

Section 7.2    **Matrix Realty Group, Inc.**  The Trustee and the Rattet Defendants shall

oppose any request by Matrix Realty Group, Inc. ("Matrix") to join or otherwise name as a third

party any of the Rattet Parties in Adversary Proceeding No. 05-8638 (ASH), *In Re FMG, et al. v.*

*Matrix Realty Group, Inc.*, currently pending in the United States Bankruptcy Court for the

Southern District of New York before Judge Adlai S. Hardin, Jr.

## ARTICLE VIII

## MISCELLANEOUS

Section 8.1    **Bankruptcy Court Approval**.   The Parties acknowledge that this

Agreement is subject to the approval of the Bankruptcy Court and, except as otherwise set forth

in the Agreement, shall be of no force or effect unless and until such approval is obtained and the

Approval Order becomes a Final Order.  The Trustee, subject to her fiduciary duties, and the

Rattet Parties covenant and agree that they shall execute and deliver each document, and shall

take each act that is or may be reasonably required to (a) gain entry of the Approval Order by the

Bankruptcy Court approving the compromise and settlement set forth herein and authorizing the

consummation of the transactions contemplated hereby; and (b) give complete effect to the

dismissals and releases contemplated by this Agreement.

Section 8.2    **No Admission of Liability**.   Except as provided herein, the Parties

understand and agree that this Agreement is a compromise and settlement of disputed claims and

that the execution of this Agreement is not to be construed as an admission or evidence in any

subsequent suit or proceeding or dispute of any liability, wrongdoing, or obligation whatsoever

by any party to any other party or to any other person with respect to any of the matters

13

addressed in this Agreement. The Parties further recognize and acknowledge that each of the Parties is represented by counsel, and each such Party received independent legal advice with respect to the advisability of entering into this Agreement. Each of the Parties acknowledge that the negotiations leading up to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each Party's own free will; that each Party knows all of the relevant facts and his, her, or its rights in connection therewith; and that he, she, or it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any Party or employee, agent, attorney, or representative of any Party to this Agreement. The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense, uncertainty, and inconvenience of litigation and other disputes, and to compromise permanently and settle the claims among the Parties settled by this Agreement.

Section 8.3   **Costs**. Except as otherwise expressly provided herein, each of the Parties hereto shall bear such Party's own costs and attorneys' fees.

Section 8.4   **Interpretation**. The Parties acknowledge and agree that (a) each Party and its counsel reviewed and negotiated the terms and provisions of this Agreement and have contributed to its revision; (b) the rule of construction to the effect that any ambiguities are resolved against the drafting party shall not be employed in the interpretation of this Agreement; (c) the terms and provisions of this Agreement shall be construed fairly as to all Parties, regardless of which party was generally responsible for the preparation of this Agreement; and (d) in this Agreement, the singular shall include the plural and vice versa where the content so requires.

14

Section 8.5    **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regard to its principles concerning conflicts of laws).

Section 8.6    **Waiver of Jury Trial**. The Parties hereby irrevocably waive, to the fullest extent permitted by law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.

Section 8.7    **Severability**. In case any one or more of the provisions contained in this Agreement shall be determined to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected and/or impaired thereby.

Section 8.8    **No Release For Non-Parties**. It is the specific intent and understanding of the parties to this Agreement that the Trustee reserves and does not waive or otherwise release any other claims that the Trustee, the Debtors or the Debtors' Bankruptcy Estates possess against any other person or entity who is not a party to this Agreement.

Section 8.9    **Notices**. All notices and other communications under this Agreement shall be sent, if to the Trustee, to her address or telecopier number indicated below, and, if to any or all of the Rattet Parties, to their addresses or telecopier numbers indicated below, or to such other address or telecopier number as they may notify the others to use in writing. No such notice shall be effective until actually received, unless the intended recipient fails to maintain, or fails to notify, the other party of any relevant change of its name, address or telecopier number, in which case such notice shall be effective when sent in accordance with this Agreement.

15

If to the Trustee:

Janice B. Grubin, Esq.
Drinker Biddle & Reath LLP
140 Broadway, 39th Floor
New York, NY  10005
Telecopier:    (212) 248-3141
Telephone:    (212) 248-3140

With a copy to:

Drinker Biddle & Reath LLP
Attn:   Warren von Credo Baker, Esq.
191 N. Wacker Drive, Suite 3700
Chicago, IL  60606
Telecopier:    (312) 569-3000
Telephone:    (312) 569-1000

If to any of the Rattet Parties:

Rattet, Pasternak & Gordon Oliver, LLP
Attn:   Robert L. Rattet, Esq.
          Jonathan S. Pasternak, Esq.
550 Mamaroneck Avenue, Suite 510
Harrison, NY  10528
Telecopier:    (914) 381-7406
Telephone:    (914) 381-7400

<u>With a copy to:</u>

Quarles & Brady LLP
Attn:   John Collen, Esq.
500 West Madison Street, Suite 3700
Chicago, IL  60661-2511
Telecopier:    (312) 715-1750
Telephone:    (312) 715-5068

<u>With a further copy to:</u>

White Fleischner & Fino LLP
Attn:   Benjamin A. Fleischner, Esq.
         Gil M. Coogler, Esq.
61 Broadway, 18th Floor
New York, New York 10006
Telecopier:    (212) 487-9777
Telephone:    (212) 487-9700

Section 8.10    **Retention of Jurisdiction**.  The Bankruptcy Court retains jurisdiction to

interpret, implement, and enforce the provisions of this Agreement, including, but not limited to,

reopening the 64 East Adversary Proceeding, and the Parties consent to the exclusive jurisdiction

of the Bankruptcy Court with respect thereto.  Each Party hereto agrees that it shall bring any

action or proceeding in respect of any claim arising out of or related to this Agreement whether

in tort or contract or at law or in equity, first (A) in the Bankruptcy Court to the extent the

Bankruptcy Court has jurisdiction, and then (B) in all other cases in the United States District

Court for the Southern District of New York, and then (C) in the event the United States District

Court for the Southern District of New York does not have jurisdiction, then to the New York

state court  (the "<u>Chosen Courts</u>") and (I) irrevocably submits to the exclusive jurisdiction of the

Chosen Courts, (II) waives any objection to laying venue in any such action or proceeding in the

Chosen Courts and (III) waives any objection that the Chosen Courts are an inconvenient forum

or do not have jurisdiction over any party hereto.

Section 8.11  **Entire Agreement, Amendments, and Waiver**.  This Agreement, including any and all Exhibits hereto, constitutes the entire agreement between the Trustee, the Debtors, the Debtors' Bankruptcy Estates, on the one hand, and each of the Rattet Parties, on the other hand, and supersedes all prior agreements, warranties, representations, and understandings between the Trustee, the Debtors, and the Debtors' Bankruptcy Estates, on the one hand, and each of the Rattet Parties, on the other hand, with respect to the subject matter herein.  This Agreement may be amended only by a written instrument signed by the Parties or their successors and assigns.  No waiver of any of the provisions of this Agreement shall be deemed to constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

Section 8.12  **Counterparts**.  This Agreement may be executed by the Parties in separate counterparts which together shall constitute one and the same instrument.

Section 8.13  **Survival**.  This Agreement shall survive (a) conversion of any or all of the Bankruptcy Cases to Chapter 7, (b) dismissal of any or all of the Bankruptcy Cases, (c) confirmation of any plan of reorganization or liquidation in the Debtors' bankruptcy cases and (d) closing of any or all of the Bankruptcy Cases.  This Agreement shall be binding on any successor trustee(s) to the Trustee and on any Chapter 7 Trustee(s) of any of the Bankruptcy Estates.

Section 8.14  **Headings**.  The descriptive headings of the sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

Section 8.15  **Facsimiles**.  This Agreement may be executed by facsimile signatures, provided that the original signatures promptly are delivered to each party's counsel.

18

Section 8.16    **Binding on Successors**. This Agreement shall be binding upon, and shall inure to the benefit of, the Trustee, the Debtors, the Debtors' Bankruptcy Estates, on the one hand, and the Rattet Parties on the other hand, and shall be binding upon all successors and assigns of the Parties to this Agreement.

Section 8.17    **Third-Party Beneficiaries**.    Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any person other than the Parties, the Debtors' Bankruptcy Estates, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition, or stipulation thereof; and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties, the Debtors, the Debtors' Bankruptcy Estates, and their respective successors and assigns.

**[Remainder of Page Intentionally Left Blank]**

**EXECUTION COPY**

**IN WITNESS THEREOF**, the Parties have executed this Agreement as of the date first written above.

JANICE B. GRUBIN, not individually but solely in her capacity as Chapter 11 Trustee for Food Management Group, LLC, KMA I, Inc., KMA II, Inc., KMA III, Inc., and Bronx Donut Bakery, Inc.

_____

ROBERT L. RATTET, an Individual


_____


JONATHAN S. PASTERNAK, an Individual


_____


RATTET, PASTERNAK & GORDON OLIVER, LLP

By: _____
Its: _____

CH01/ 13508486.7

**EXECUTION COPY**

**IN WITNESS THEREOF,** the Parties have executed this Agreement as of the date first

written above.

JANICE B. GRUBIN, not individually but solely in her
capacity as Chapter 11 Trustee for Food Management
Group, LLC, KMA I, Inc., KMA II, Inc., KMA III,
Inc., and Bronx Donut Bakery, Inc.

ROBERT L. RATTET, an Individual

JONATHAN S. PASTERNAK, an Individual

RATTET, PASTERNAK & GORDON OLIVER, LLP

By:
Its:
ROBERT. L. RATTET, PARTNER

CH01/ 13508486.7

# EXHIBIT A

**First Interim Fee Application: 6/1/2004 - 9/1/2005**

- Amount requested in fee application filed with court.    **$997, 987.75** fees         **$125,994.73** expenses

- Amount paid for 6/1/04 – 9/1/05    **$653,408.88** fees         **$120,361.47** expenses

- Amount unpaid for 6/1/04 – 9/1/05    **$344,578.87** fees         **$5,633.26** expenses


**Second Interim and Final Fee Application: 9/2/2005 – 12/31/05**

- Amount requested    **$19,551.00** fees         **$5,981.22** expenses
- Amount paid    **$0.00** fees         **$0.00** expenses
- Amount unpaid    **$19,551.00** fees         **$5,981.22** expenses


**Fees and expenses requested for months after the Second Interim and Final Fee Application:**

- Amount requested    **$ 64,807.50** fees         **$ 1,423.10** expenses

- Amount paid    **$0.00** fees         **$0.00** expenses

- Amount unpaid    **$ 64,807.50** fees         **$ 1,423.10** expenses


**Total of unapplied retainer: $ 42,902.14.**

**Total requested**         **$1,082,346.25** fees    **$133,399.05** expenses

**Total paid with application of retainer**         **$696,311.02** fees    **$120,361.47** expenses

**TOTAL AMOUNT PAID** **$816,672.49**

**Total unpaid**         **$ 386,035.23** fees    **$13,037.58** expenses

**TOTAL AMOUNT UNPAID** **$399,072.81**

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:                                                    Chapter 11

FOOD MANAGEMENT GROUP, LLC,          Case No. 04-22880 (ASH)
KMA I, Inc.,                         Case No. 04-22890 (ASH)
KMA II, Inc.,                        Case No. 04-22891 (ASH)
KMA III, Inc.,                       Case No. 04-22892 (ASH)
BRONX DONUT BAKERY, INC.,            Case No. 04-20312 (ASH)

                    Debtors.         (Jointly Admitted)
-----------------------------------------------------------x
JANICE B. GRUBIN, in her capacity
as Chapter 11 Trustee for Debtors
FOOD MANAGEMENT GROUP, LLC
KMA I, Inc., KMA II, Inc., KMA III, Inc.,
and BRONX DONUT BAKERY, INC.,

                    Plaintiff,

                    v.               Adversary Pro. No. 07-A-08221-MG

ROBERT L. RATTET; JONATHAN S.
PASTERNAK; RATTET, PASTERNAK &
GORDON OLIVER, LLP; *et al.*

                    Defendants.
-----------------------------------------------------------x

## STIPULATION OF DISMISSAL

**IT IS HEREBY STIPULATED AND AGREED** that the above-entitled action

is hereby dismissed pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure and Rule

7041 of the Federal Rules of Bankruptcy Procedure with prejudice and without costs to either

party. The Bankruptcy Court shall retain jurisdiction over the terms of this Order as well as to

enforce the terms of that certain Settlement Agreement by and between Janice B. Grubin, the

Chapter 11 Trustee for the Debtors, and Robert L. Rattet, Jonathan S. Pasternak, and Rattet,

Pasternak & Gordon Oliver LLP, dated as of June 24, 2008.

Dated:  Chicago, Illinois
         July ___, 2008

DRINKER BIDDLE & REATH LLP      QUARLES & BRADY LLP


By: _____      By: _____
      Warren von Credo Baker (WB-1100)       John Collen (JC-6503)

191 North Wacker Drive, Suite 3700      500 West Madison Street, Suite 3700
Chicago, Illinois  60606-1698      Chicago, Illinois 60661-2511
Tel: 312-569-1000      Tel: 312-715-5068

*Attorneys for Plaintiff Janice B. Grubin, as*      *Attorneys for Defendants Robert L. Rattet,*
*Chapter 11 Trustee*      *Jonathan S. Pasternak & Rattet Pasternak*
     *& Gordon Oliver LLP*

     WHITE FLEISCHNER & FINO LLP


     By: _____
       Benjamin A. Fleischner (BF-7006)
       Gil M. Coogler (GC-2785)

     61 Broadway, 18th Floor
     New York, New York 10006
     Tel: 212-487-9700

     *Attorneys for Defendants Robert L. Rattet,*
     *Jonathan S. Pasternak & Rattet Pasternak*
     *& Gordon Oliver LLP*


Dated:  New York, New York
         July __, 2008      _____
     **HONORABLE MARTIN GLENN,**
     **UNITED STATES BANKRUPTCY JUDGE**


CH01/ 25115753.1

3